Wilma Bennett, Appellee, v. Auditorium Building Corporation, Appellant.

Gen. No. 40,252.

140

Opinion filed February 27, 1939. Rehearing denied March 13, 1939.

LORD, BISSELL & KADYK, of Chicago, for appellant; RAYMOND WEARING and GORDON R. CLOSE, both of Chicago, of counsel.

KROHN & MACDONALD and SIDNEY ROTHBLATT, both of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover damages for personal injuries claimed to have been sustained by her. The declaration was in three counts. The first charged defendant with negligently permitting a "slimy substance" to remain on the floor of its tap room, as a result of which plaintiff fell and was injured. The second count was based upon a violation of section 14 of the Dram Shop Act [Ill. Rev. Stat. 1937, ch. 43, § 135; Jones Ill. Stats. Ann. 68.042],

and alleged that defendant sold alcoholic liquor to one of its patrons causing her to be intoxicated, and as a result she vomited on the floor of the tap room; that plaintiff in the exercise of due care stepped in the vomit, slipped, fell and was injured. The third count was also based upon section 14 of the Dram Shop Act and alleged that defendant sold or gave to plaintiff alcoholic liquor, causing her to become intoxicated, and while walking in the tap room she slipped and fell in a "puddle of slime" on the floor and was seriously injured.

Afterward, by agreement of the parties an order was entered striking the third count, and about 20 days thereafter plaintiff, by leave of court, filed an amended complaint in 2 counts substantially the same as counts 1 and 2 of the original complaint. Defendant answered the amended complaint. Afterward the cause was called for trial, a jury was impaneled, and on motion of plaintiff's attorney count 1 of the amended complaint was dismissed and the trial proceeded under count 2. There was a verdict and judgment in plaintiff's favor for $2,500 and defendant appeals.

The record discloses that defendant was operating a tap room in the Auditorium hotel in Chicago, and about 9:30 o'clock on the evening of March 29, 1935, plaintiff went to the tap room to keep an appointment with a friend. She testified she waited in the hotel lobby for her friend but as he was late she telephoned him and then went to the tap room, had a couple of cocktails, ate a light dinner, met some friends with whom she talked for awhile, and about 11 or 11:30 o'clock left the tap room to make a telephone call and when she returned she slipped on some slime or vomitus on the floor, fell and was severely injured. She was taken upstairs to a room by employees of the tap room of the hotel and was attended by a physician and a nurse, and the next morning was taken to a hospital on the west side where

she was confined for about 3 weeks; she then went to her home and was still under treatment by her doctor at the time of the trial, which began February 28, 1938, and there is evidence to the effect that her injuries are permanent.

Further evidence offered on behalf of plaintiff is to the effect that during the evening while she was in the tap room there were a number of waiters and three bartenders serving food and drinks to patrons. Mrs. Miglore who had dinner with some friends in the tap room, called by plaintiff, testified that she had known plaintiff for about 10 years and saw and talked with her in the tap room on the evening in question; that during the evening she saw a woman sitting on a stool at the bar whom she did not know, and that a man was sitting on a stool next to this woman; "I imagine she was with him at the bar, because he left with her, and she was drinking at the bar with him"; that during the time she noticed her this woman became "boisterous and kind of silly" and seemed to be intoxicated; that within an hour and a half she saw the woman drink "six oldfashioneds and two or three whiskey sours"; that after plaintiff left the tap room about 11 o'clock and went to the lobby the woman at the bar left it and staggered; the man with her helped her toward the lobby but the woman "became sick to her stomach and vomited on the floor," and that some 10 or 15 minutes afterward plaintiff returning slipped in the vomit, fell and was injured; that the vomit remained on the floor about 15 minutes after plaintiff fell and that no one made any attempt to clean it up during a period of about 25 minutes. The only occurrence witnesses for plaintiff were Mrs. Miglore and plaintiff.

Defendant called four waiters who were working in the tap room on the evening in question, who saw the accident. The testimony of each of these witnesses is to the effect that he saw plaintiff and quite a number of

other patrons in the tap room during the evening; that plaintiff was sitting on a stool at the end of the bar; that about 11 o'clock she got off the stool, took a few steps, then turned apparently to go in another direction, fell on the floor and was injured. They all testified there was no vomit or any slimy substance on the floor at any time during the evening. Other employees came immediately after the accident and plaintiff was taken upstairs to a room where a doctor was called. They all testified they saw no vomit or any substance on the floor or on plaintiff's dress, and that they noticed no smell of any person having vomited. There is considerable other evidence in the record, but we think it unnecessary to comment on it.

Plaintiff's theory of the case is that defendant "either sold or gave to one of its patrons [the unknown woman at the bar] alcoholic drinks of sufficient number and quality to produce intoxication"; that such patron became intoxicated as a result of which she became nauseated and vomited "upon the floor, producing a dangerous condition," and as a result of such dangerous condition plaintiff slipped and fell in the vomit, causing the injuries.

On the other side one of defendant's contentions is that "plaintiff cannot recover under the 'Dramshop Act' because the evidence fails to prove . . . That alcoholic liquor was sold or given to the person alleged to have vomited on the floor," and in support of this cite section 14, par. 135, ch. 43, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 68.042]; *Siegel v. People*, 106 Ill. 89; *Austin v. Bass*, 206 Ill. App. 435; *Gunderson v. First Nat. Bank*, 296 Ill. App. 111.

Section 14 of the Dramshop Act (par. 135, ch. 43, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 68.042]) provides: "Every . . . person, who shall be injured, . . . by any intoxicated person, or in consequence of the intoxication, . . . of any person, shall have a right of

action . . . against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person.''

In the *Siegel* case the defendant was indicted and convicted of selling liquor to a minor in violation of sec. 6 of the Dramshop Act of 1874. Mr. Justice Schofield, in delivering the opinion of the court said (p. 94): ''So much of that section of the statute as is material reads as follows: 'Whoever, by himself or his agent or servant, shall sell or give intoxicating liquor to any minor, without the written order of his parent, guardian or family physician, . . . shall, for each offence, be fined' etc.'' The judgment of conviction was reversed because the evidence showed that the intoxicating liquor was sold to an adult who was a companion of the minor, and the liquor was then given by the adult to the minor who consumed it. It was held this was not a violation of the statute because the sale had not been made by Siegel to the minor but to the adult. That case is not in point because the section there involved made it an offence to ''sell or give intoxicating liquor *to* any minor,'' etc., while section 14, which is the basis for plaintiff's suit, does not contain a similar provision. It provides that a person who is injured by an intoxicated person or in consequence of such intoxication shall have a right of action against the person or persons who sold or gave the alcoholic liquor that caused the intoxication. The section does not provide that the selling or giving must be *to* the intoxicated person, as did the statute involved in the *Siegel* case.

In the *Austin* case the evidence shows that Nell Bass resided in a house belonging to James C. Harris and ''was running what the witnesses termed 'a bootlegging joint' ''; that about 5 p. m. Austin and George Briscoe went to the house and Austin ordered three bottles of beer from Bass, paying her 25 or 30 cents for it; he gave one of the bottles to Briscoe and the

other to Bass; that they all sat down at the table and drank beer until 8 o'clock of the same evening; that during that time "John Sposta brought a bucket of beer from a saloon down town" and Bass, Austin and Briscoe drank out of the bucket; about 8 o'clock Austin and Bass quarreled and she shot and killed him. His widow brought an action against Bass and the landlord, Harris. The basis of the suit was section 9 of the Dramshop Act which provided: "Every . . . wife, . . . who shall be injured in person, property or means of support, by an intoxicated person, or in consequence of the intoxication, . . . of any person, shall have a right of action . . . against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons." Plaintiff had a verdict and judgment in her favor, and on appeal the judgment was reversed and the cause remanded. The court said: "It is insisted by counsel for appellants that even if the death was caused solely by the intoxication of Nell Bass, there could be no liability, and upon the trial instruction number 8 was presented by them and refused by the court." The instruction was to the effect that if the jury believed from the evidence that Bass was intoxicated at the time Austin was killed and "that because or on account of her said intoxication, if any, alone, she shot and killed the plaintiff's husband, . . ." then they should find both defendants not guilty. The court held it was error to refuse this instruction, and continuing said: "In this case Nell Bass killed Bob Austin and deprived his widow of her means of support, but was such killing caused by the selling or giving away of intoxicating liquors by Nell Bass? . . . It seems to us that under the decisions of this court that after Bob Austin had purchased this beer of Nell Bass he had the right to do as he pleased with it, and he chose to give Nell Bass one of the bot-

tles to drink, and that if any one was responsible for this it would be Bob Austin who gave it to her." The court then discusses the *Siegel* case. We are unable to agree with the reasoning of the court in the *Austin* case because we think the statute involved in that case is not similar to the statute involved in the *Siegel* case, but is substantially the same as section 14 involved in the *Austin* case. As stated, the statute involved in the *Siegel* case made it a punishable offence to sell or give intoxicating liquor *to* a minor, while the statute in the *Austin* case gave a right of action to the widow, whose means of support was "injured" by an intoxicated person or in consequence of such intoxication, against the person who sold or gave the intoxicating liquor which caused the intoxication. The statute does not say the selling or giving must be directly to the intoxicated person.

The *Gunderson* case (296 Ill. App. 111) was an action under the same section of the Dramshop Act as is involved in the case at bar. In that case an action was brought against the defendant who owned the building, permitting a part of it to be used for a tavern; that the operators of the tavern "gave or sold liquor" to one of its patrons, causing him to become intoxicated and while in that condition he assaulted plaintiff. At the close of plaintiff's case there was a directed verdict for defendant, but a new trial was allowed from which an appeal was prosecuted to this court where the order allowing the new trial was reversed and the cause remanded. The court held that the person who assaulted plaintiff was the owner of the tavern and helped himself to his own liquor, which was not a violation of the statute, and that plaintiff could not recover against the landlord unless he could do so against the tenant. The court there said: "It is clear that Monaco [the owner of the tavern] could make neither a sale nor a gift of liquor to himself and since there was no evidence of a sale or gift of liquor by the tavern operator

as is required by the Dramshop act in order to hold liable the owner of the premises in which the tavern was located, the verdict was properly directed for defendant." The facts in that case are not similar to the facts in the case at bar. There the proprietor of the tavern helped himself to his own liquor, became intoxicated and assaulted plaintiff, while in the instant case plaintiff's evidence is to the effect that defendant sold intoxicating liquors which caused "the intoxication in whole or in part" of the woman at the bar who consumed the liquor. Defendant's evidence tended to show that plaintiff herself purchased liquor from defendant, which she consumed, causing her to become intoxicated; and it seems to be conceded that if plaintiff purchased the intoxicating liquors for herself and became intoxicated so as to cause her to fall, she could not recover. *Buntin v. Hutton,* 206 Ill. App. 194. And the third count of the amended complaint, which was based on this theory, was eliminated by plaintiff. There was evidence tending to sustain the respective theories of the parties and therefore the question was for the jury.

Defendant further contends that the verdict of the jury in plaintiff's favor is against the manifest weight of the evidence, and that in such circumstances it is the duty of this court to reverse and remand the cause for a new trial. In *White v. City of Belleville,* 364 Ill. 577, the court said: "If a verdict and the judgment of the trial court are manifestly against the weight of the evidence the Appellate court may reverse and remand for a new trial. *Ill. Cent. R. R. Co. v. Smith,* 208 Ill. 608; *Chicago City Ry. Co. v. Mead,* 206 id., 174."

We think defendant's contention must be sustained. The manifest weight of the evidence is that there was no vomit on the floor causing plaintiff to fall. We have above referred to the testimony of the witnesses; the only one who testified that vomit was on the floor was Mrs. Miglore, and plaintiff testified she slipped on

some slimy substance. Mrs. Miglore further testified that the vomit remained on the floor about 25 minutes and that no one attempted to remove it, although the evidence is clear that the waiters and patrons were constantly passing over this part of the floor, and at least six witnesses testified there was nothing of that kind on the floor at any time during the evening.

On the trial counsel for defendant offered in evidence paragraph 6 of count 3 of the original complaint in which it was alleged that defendant was liable under section 14 of the Dram Shop Act because it had sold and given alcoholic liquors to plaintiff which caused her to become intoxicated, as a result of which she slipped and fell to the floor. Upon objection, the evidence was excluded. We think this was error. It must be assumed that plaintiff advised her attorneys of the facts and they drew her complaint accordingly. One of the controlling questions in the case was whether plaintiff's fall resulted from her becoming intoxicated and, as stated, it seems to be assumed by both parties that if this were the fact she could not recover. The jury in weighing plaintiff's testimony had a right to know what plaintiff had alleged in her original complaint in this respect.

We are also of opinion that the court erred in refusing an instruction requested by defendant by which it was sought to tell the jury that plaintiff could not recover unless she was in the exercise of due care as she alleged in her amended complaint, but which was denied by defendant in its answer. While the instant suit is brought under the Dram Shop Act, we think that under the pleading and evidence plaintiff could not recover unless she was in the exercise of due care.

For the reasons stated, the judgment of the superior court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

McSurely, P. J., and Matchett, J., concur.