ERNEST R. PETERSON SR., Admr., Plaintiff-Appellant, *v.* JACK DONELSON SALES COMPANY, Defendant-Appellee.

(No. 71-137; ▓▓▓▓▓▓▓▓▓

Second District—April 14, 1972.

David A. Decker, of Waukegan, for appellant.

Diver, Ridge, Brydges & Bollman, of Waukegan, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

Plaintiff appeals from summary judgment for defendant in a suit grounded on the Dram Shop Act, (Ill. Rev. Stat. 1969, ch. 143 par. 135), seeking recovery for property damage and for loss of support by dependents of plaintiff's decedent. In entering judgment, the trial court found there was no direct sale within the meaning of the Act.

Decedent was a member of Plumbers Local Union No. 93. On July 18, 1970, he attended a union picnic at Daniel Wright Woods in Lake County and drank beer causing his intoxication. The beer had been sold by defendant in a large quantity and transported that day to the picnic ground in half barrels on a truck or van with facilities for cooling, tapping and dispensing. Defendant's employees did not serve the beer to individuals, but did tap open the first two half-barrels, leaving the truck with its contents upon the grounds until the end of the day when they removed it. Defendant was involved in an auto collision that day which caused his death, allegedly as a result of his intoxication.

The purpose of a summary judgment procedure is not to try

an issue of fact, but rather to determine if one exists. ( *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill.App.2d 412, 416, 199 N.E.2d 300.) The judgment below can be affirmed only if the complaint, considered together with affidavits and exhibits in the record, indicate that plaintiff has failed to allege facts sufficient to state a cause of action within the provisions of the Dram Shop Act.

One question in dispute is this: To whom did defendant sell eight half-barrels of beer? An affidavit of its president states the sale was made to the local union and an attached sales slip of defendant corporation so indicates. The complaint, however, alleges the sale was to *members* of the union, and supporting affidavits by the secretary-treasurer and entertainment committee chairman of the local union indicate the beer was paid for, not from union dues or other official funds, but from a separate fund collected from members as fines for non-attendance at regular meetings and used exclusively for entertainment of the members.

A further question, and the central issue, is this: if the seller of intoxicating liquor in bulk comes within the scope of the Dram Shop Act, for whose intoxication is the seller liable? Only that of persons purchasing directly, personally, and individually from the bulk seller?

The complaint alleged defendant sold the beer to members of the union for use at a union picnic and knew, or had reasonable grounds to know, it would be consumed by union members at the picnic, that decedent was a union member, and that he attended the picnic where he drank the beer sold by defendant. Affidavit of the president of defendant corporation states that neither affiant nor any agent or employee of defendant had any knowledge as to who would consume the beer and did not know decedent personally or that he was a union member. Affidavit of the chairman of the union members' entertainment committee, however, states he ordered eight half-barrels of beer from defendant, informed defendant's representative on the phone that it was being purchased for the members' picnic and was to be delivered to Daniel Wright Woods on July 18, 1970, that it was to be delivered in a truck containing a cooler which kept the beer chilled, and that he requested defendant to send the bill for payment to the union office.

In support of the position that plaintiff's claim must fail because the sale was not made directly to decedent, defendant cites *Blackwell v. Fernandez* (1945), 324 Ill.App. 597, 59 N.E.2d 342 holding that the Dram Shop Act did not apply where liquor purchased in a tavern was given by the purchaser after leaving the premises, to his roommate who became intoxicated; and similarly in *Stinson v. Edlen* (1960), 27 Ill.App. 2d 425, 169 N.E.2d 682 where 24 cans of beer were purchased from a common fund but the intoxicated person remained at his place of em-

ployment while two others drove to defendant's tavern and one went inside to make the purchase. In *McCoy v. Spalding* (1963), 41 Ill.App.2d 292, 190 N.E.2d 483 the court refused to hold defendant liable for a shooting by a person who became intoxicated after consuming liquor purchased by his companion; and it was held in *Rittmeyer v. Anderson* (1964), 49 Ill.App.2d 71, 199 N.E.2d 463 a complaint alleging sale of a "pony keg" of beer, about four gallons, purchased by a single individual with funds contributed by prospective party participants and resulting in intoxication and self-inflicted death of another, did not state a cause of action under the Dram Shop Act. Although the complaint alleged defendant knew or reasonably should have known of the purchaser's intent to furnish the beer to other persons, the court said the pleading did not allege a direct sale nor that decedent was present with the buyer upon defendant's premises at the time of the purchase.

Varying circumstances, however, have produced contrary views in other cases. In *Bennett v. Auditorium Bldg. Corp.* (1939), 299 Ill.App. 139, 19 N.E.2d 626 it was contended that alcoholic liquor served to a woman did not constitute a sale because the drinks were paid for by her escort, but this view was rejected and the court held it amounted to a sale to the person served. A tavern keeper was not relieved of liability where liquor was sold to companions and consumed by a fourteen year old youth who became intoxicated, as the sale was made in the presence of the minor when the defendant allegedly knew or had reasonable grounds to believe he would drink all or part of the liquor. *Bell v. Poindexter* (1949), 363 Ill.App.541, 84 N.E.2d 646.

Although the cases cited above are somewhat analogous, no closely factual Illinois decision has come to our attention and we look for direction to the aim and boundaries of liability under the Illinois statute.

The clearest limitation upon the liability created by the Dram Shop Act was its early judicial restriction to persons engaged in the liquor traffic for the purpose of pecuniary gain. (*Cruse v. Aden* (1889), 127 Ill. 231, 20 N.E. 73.) Although *Miller v. Owens-Ill. Glass Co., supra,* also involved a picnic for members of a group (employees), none of the defendants (the employer upon whose premises the picnic was held, an employees' association, and individual employees) were engaged in the liquor business for profit, and it was consequently held the complaint was properly dismissed.

■■ The purpose of the Act is to place the burden of the evils of the liquor traffic on those who profit therefrom. (*Tresch v. Nielsen* (1965), 57 Ill.App.2d 469, 207 N.E.2d 109.) The act embraces both regulation of the liquor traffic and redress for injury. *Graham v. General U.S. Grant Post No. 2665* (1968), 97 Ill.App.2d 139, 239 N.E.2d 856.

A reading of the many and varied Dram Shop cases in Illinois discloses a considerable variance in the approach of the courts to the problem. Numerous cases state that the Act should be "liberally construed." On the other hand, other courts have frequently observed that the Act is penal in character and should be strictly construed. The latter view was adopted by the court in *Rittmeyer, supra*. Shortly thereafter the Illinois Supreme Court in *Hernandez v. Diaz* (1964), 31 Ill.2d 393, 399, 202 N.E.2d 9 made the general statement:

"* * * that the act shall be liberally construed to the end that the health, safety and welfare of the people of the State of Illinois shall be protected."

In utilizing the liberal construction theory, the Supreme Court in *Hernandez* was confronted with the problem under the Act as to whether the injury was the result of a direct affirmative act of the intoxicated person. In that case Hernandez was seated in a bar when four intoxicated men scuffled with a guard hired by the tavern and a shot was fired by the guard which struck Hernandez. Hernandez then filed suit under the Dram Shop Act against the tavern owner. The court in using the liberal construction theory merely held that the injury was caused by the intoxicated person and that there was a direct relation between the act of the intoxicated person and the injured party although caused by a guard seeking to remedy the situation. The court went on to say "the legislature had the intention of protecting innocent parties from the acts of intoxicated persons."

The question then arises, as to what construction should be followed by this court under the factual situation existing here. Do we adopt the liberal theory by extending the Dram Shop Act to cover the wholesaler selling either to the Union or to members of the Union, as being a party engaged in the liquor traffic for the purpose of pecuniary gain, or do we adopt the strict theory that the legislature never intended in the enactment of the Dram Shop Act originally, or by its considerable amendments, to cover the factual situation with which we are confronted?

No problem is presented in this case of an injury arising at a time remote from the pecuniary transaction as this very large quantity of beer was knowingly provided by the seller at Warren Wright Woods and could only have been intended for consumption that day by those attending the picnic. Defendant's employees transported it there on a van equipped for serving the beer and provided 300 units of ice and 800 cups, removing the van at the end of the day. In our opinion these rather unique circumstances are at least the rough equivalent of bringing the defendant's dram shop premises to the picnic grove.

■■ It is this court's opinion that while the beer was ordered prior to

the picnic and paid for after the picnic, the delivery and the set-up for dispensing the beer at the picnic grove was done by the defendant. While it is true it did not actually dispense it, in this court's opinion the defendant as a wholesaler for all practical purposes, provided a dram shop where the plaintiff's decedent and others could become intoxicated.

The matter is before us upon a dismissal of the complaint and we therefore reverse the judgment of the Circuit Court of Lake County and remand the same for trial upon the merits.

Reversed and remanded.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.