Joseph **FOSTER**, Appellant (Plaintiff Below),

v.

The **PURDUE UNIVERSITY CHAPTER, THE BETA MU OF BETA THETA PI, Beta Theta Pi Fraternity, Bar Barry Liquors, Inc., and The Beta Mu Chapter House Association, Inc., of Beta Theta Pi**, Appellees (Defendants Below).

No. 86A03–9004–CV–151.

Court of Appeals of Indiana, Third District.

March 13, 1991.

Thomas J. Lantz, Montgomery, Elsner & Pardieck, Seymour, for appellant.

Jerome L. Withered, Reiling, Teder & Withered, Lafayette, for The Purdue University Chapter, The Beta Mu of Beta Theta Pi, Beta Theta Pi Fraternity, and the Beta Mu Chapter House Association, Inc. of Beta Theta Pi.

Cheryl M. Knodle, Michael J. Stapleton, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for Bar Barry Liquors, Inc.

STATON, Judge.

Joseph Foster appeals a grant of summary judgment against him, presenting various issues which we restate as follows:

I.   Did the trial court err in granting summary judgment in favor of Bar Barry Liquors, Inc.?

II.  Did the trial court err in granting summary judgment in favor of The Purdue University Chapter, The Beta Mu of Beta Theta Pi?

III. Did the trial court err in granting summary judgment in favor of The Beta Mu Chapter House Association, Inc. of Beta Theta Pi?

IV. Did the trial court err in granting summary judgment in favor of Beta Theta Pi Fraternity?

We affirm.

Joseph Foster, an eighteen year old Purdue University freshman, became a member of Beta Theta Pi fraternity on April 14, 1985. On April 27, 1985, the Purdue Chapter was hosting a party in conjunction with a Grand Prix go-cart race held at Purdue. The "social chairmen" purchased alcoholic beverages for the party, which were delivered by Bar Barry.

At approximately 11:00 to 11:30 a.m. on April 27, Foster arrived at the Chapter House and began to consume beer and "Long Island Tea" (a concoction of rum, vodka, gin, triple sec, sweet and sour mix and cola). Foster briefly attended the Grand Prix race, and returned to the Chapter House at approximately 4:00 to 4:30 p.m.

Shortly after his return to the Chapter House, Foster climbed atop a brick wall surrounding a patio. Foster removed his shoes, socks and watch, then dove head-first onto a "waterslide"[1] located approximately 6–8 feet below the wall. Tragically, Foster broke his neck and was rendered a quadriplegic.

On October 30, 1985, Foster filed a complaint against his fraternity chapter, alleging that he was severely injured due to the chapter's maintenance of the waterslide and provision of alcoholic beverages. He subsequently filed an amended complaint joining the Beta Theta Pi Fraternity ("General Fraternity"), Bar Barry Liquors, Inc. ("Bar Barry"), and the Beta Mu Chapter House Association, Inc. ("House Association"). The trial court granted each defendant's motion for summary judgment, precipitating the instant appeal.

## I.

### *Summary Judgment Favoring Bar Barry*

Foster argues that summary judgment was improperly granted in favor of Bar Barry because (1) a material issue of fact exists concerning whether Bar employees should have known that alcohol would be furnished to a minor; (2) the trial court erred by finding as a matter of law that Bar Barry owed no duty to Foster and (3) the trial court erred by concluding that Foster's conduct was voluntary and intentional, precluding his recovery under The Indiana Comparative Fault Act.

---

**1.** The "waterslide" was constructed of a smooth-surfaced material. Water flowed from two hoses placed at the top of the slide. A "pool" at the bottom of the slide consisted of hay bales.

Summary judgment shall be rendered if pleadings, depositions, answers to interrogatories, admissions and affidavits show that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56. Doubts are to be resolved in favor of the non-movant. If conflicting inferences can be drawn from undisputed facts, summary judgment is inappropriate. *Greives v. Greenwood* (1990), Ind.App., 550 N.E.2d 334. Where doubts remain as to the existence of a material fact, summary judgment should not be used as an abbreviated trial where evidence is weighed. *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, 1171 *trans. denied.*

The depositions before the trial court disclosed that Ted Labus ordered 4 kegs of beer and a quantity of liquor which was delivered by Bar Barry to the fraternity house on April 27, 1985. The fraternity members deposed had no specific recollection of the details surrounding the April 27 delivery. However, social chairmen Teb Labus and Guy Hadley provided details of a "typical" transaction with Bar Barry. A telephone order would be placed to Bar Barry, which would deliver the order. Purchases were made using a fraternity check or cash. Generally, the recipient was not required to produce identification. Record, pp. 466–67, 365.

Bar Barry employees, Dan Hensley and Howard Hensley, stated that one 21 year old must be present to accept delivery of each keg of beer. Record, pp. 413, 415, 419, 321–22. Pursuant to a written delivery policy, Bar Barry maintains a list of fraternity members eligible to purchase alcohol. Each delivery vehicle contains a copy of the list of names and social security numbers. At the end of a school year, the lists are discarded. Record, pp. 318–20. Foster, at 18, was ineligible to purchase alcohol directly from Bar Barry. He was unaware that his fraternity brothers had done so. Record, p. 1237.

Indisputably, Bar Barry did not *directly* furnish alcohol to Foster, a minor, in violation of IC 7.1–5–7–8. However, Foster argues that the facts support an inference that Bar employees knew, or should have known, that the direct purchasers (21 year old fraternity members) would share their purchases with their underage fraternity brothers. He refers to the large quantity delivered on a single day and "common knowledge" that the majority of college students are under age 21. Bar Barry does not deny knowledge that some fraternity members, or persons attending fraternity functions, are under age 21. However, Bar Barry maintains that it has a right to presume that fraternity members will obey the law. *Toni v. Kingan & Co.* (1938) 214 Ind. 611, 15 N.E.2d 80, 84. We conclude that there exists no disputed material fact, i.e., one which is dispositive of the litigation. T.R. 56(C).

■ Foster challenges the trial court's conclusion that Bar Barry owed him no duty. He asserts that a duty was imposed upon the bar by both the alcoholic beverage statutes and the common law. First, he argues that Bar Barry violated 7.1–3–5–3, which provides that a beer dealer is entitled to sell and deliver beer in a quantity not exceeding 15 and ½ gallons at any one time. He argues that a violation of IC 7.1–3–5–3 constitutes negligence *per se.* He urges application of the standard enunciated in *Elder v. Fisher* (1966) 247 Ind. 598, 217 N.E.2d 847, *reh. denied,* as follows: "... we have the general requirement that the statute must not have been enacted for a wholly different purpose than to prevent the injury complained of, and that the statute must be designed to protect the class of people to whom a plaintiff belongs." *Id.* 217 N.E.2d at 850.

Bar Barry replies that no individual was sold a quantity of beer exceeding the statutory amount, inasmuch as bar policy required that one fraternity member be present to receive one keg of beer. According to policy, four members should have been present to receive four kegs, although signatures verifying receipt were not required of those individuals.

Moreover, Bar Barry argues that IC 7.1–3–5–3 was enacted for a wholly different purpose than the prevention of injury to an

individual as a result of intoxication. As indicated by its corresponding heading, IC 7.1–3–5–3 defines the scope of a permit, prescribing appropriate places and quantities for sales. Bar Barry also argues that the statute could not have been enacted to prevent injury from intoxication, inasmuch as a single sale may be made of an amount sufficient to produce intoxication. We agree with Bar Barry's contentions that IC 7.1–3–5–3 merely defines the scope of a beer dealer's permit and did not impose upon Bar Barry a duty to prevent Foster's intoxication.

■ Foster next argues that Bar Barry violated a duty imposed upon it by IC 7.1–5–7–8, which prohibits the provision of an alcoholic beverage to a minor. He alleges that a violation occurred when Bar Barry sold alcohol to fraternity members over 21 who were acting as agents of fraternity members under 21. Foster refers us to cases in which courts of other jurisdictions have concluded that liability for negligent provision of alcohol may be premised upon a provider's knowledge (actual or constructive) that the alcohol will be shared. *See, e.g., Verdusco v. Miller* (1984), 138 Mich. App. 702, 360 N.W.2d 281; *Bell v. Poindexter* (1949), 336 Ill.App. 541, 84 N.E.2d 646; *Pilkins v. Hans* (1910), 87 Neb. 7, 126 N.W. 864; *Peterson v. Jack Donelson Sales Company,* (1972) 4 Ill.App.3d 792, 281 N.E.2d 753.

Foster cites two Indiana cases indicating that "furnishing" alcohol may include indirect provision. In *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, the court stated that liability could derive from alcohol provision to one individual where the provider knew, or had reason to believe, that the direct recipient intended to furnish the alcohol to a prohibited recipient. *Id.* at 79. In *Brattain v. Herron* (1974), 159 Ind.App. 663, 309 N.E.2d 150, *trans. dismissed,* the court concluded that Brattain furnished alcohol to her minor brother when she permitted him to obtain alcohol from her refrigerator.

Bar Barry relies upon *Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755, *reh. denied,* which set out four circumstances un-

der which one "furnishes" alcohol to another, i.e., purchasing alcohol on behalf of another, passively allowing alcohol to be taken from one's possession, purchasing a drink to be served to another, or selling a drink with knowledge that it will be provided to another. Bar Barry insists that none of the foregoing circumstances were present in the April 27 transaction. They argue that no statutory duty is imposed upon their employees to inquire of a legal buyer how that buyer intends to distribute the purchased alcohol. We agree.

■ Foster contends that, assuming no statutory violation, Bar Barry violated a common law duty to him. He refers us to *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217, in which liability was premised upon a service structure which "encouraged unfettered consumption of alcohol." *Id.* at 1222. A provider of alcoholic beverages has a common law duty to exercise ordinary and reasonable care in the conduct of his or her operation. *Id.* at 1220.

■ Bar Barry notes the existence of a critical difference between their operation and that of Picadilly: a right to control consumption on the premises. Bar Barry argues that a right to control another person's actions is essential to the imposition of a corresponding duty. *Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534, *trans. denied.* We find this argument persuasive. As Bar Barry had no right to control Foster's consumption of alcohol, no duty to do so is imposed by common law.

■ Foster further alleges that the trial court erroneously concluded that his own conduct bars his recovery. Admittedly, Foster's conduct was voluntary, as no one dared, encouraged or compelled him to jump onto the waterslide; neither was his descent accidental. Record, pp. 1228–29, 1234, 1253. However, he takes issue with the trial court's characterization of his conduct as "intentional."

This action is governed by the Indiana Comparative Fault Act. IC 34–4–33–2(a) provides: "As used in this chapter: 'Fault' includes any act or omission that is negli-

gent, willful, wanton or reckless toward the person or property of the actor or others, but does not include an intentional act. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages...."

Foster admits that intentional acts are excluded by the Indiana Comparative Fault Act ("Act"), but urges that the Act should be construed so as to eliminate from comparison only intentional torts, not all intentional acts.[2] The appellees reply that judicial construction is unnecessary when the meaning of a statute is plain and unambiguous. *Community Hosp. of Anderson v. McKnight* (1986), Ind., 493 N.E.2d 775, *reh denied.* They also point out that the Act has been amended four times, with no revision of intentional "act" to intentional "tort."

Both Foster and the appellees refer to the definition of "intent" found in the Restatement (Second) of Torts. Intent refers to consequences desired or consequences which the actor believes are certain or substantially certain to follow. The appellees assert that Foster (in an unintoxicated state) believed injury was substantially certain to follow a dive from the wall, as he had previously decided against making the jump. Record, p. 1238. Foster asserts that he did not intend the tragic consequences of his dive, nor did he appreciate that such consequences were substantially certain to follow his voluntary conduct.

The appellees also argue that Foster should be precluded from suing for self-inflicted injuries as a matter of public policy. They analogize to a number of cases holding (pre-Comparative Fault Act) that an intoxicated driver was barred from recovering damages for his own injuries.

Foster does not contend that his injury was produced by any instrumentality other than his dive onto a "waterslide." He ad-

mits that his dive was made voluntarily, under no duress or compulsion. Foster experienced no "accident." While Foster's good judgment may have been affected by his level of intoxication, his action was nonetheless "intentional." Our legislature has seen fit to exclude intentional "acts" from the comparative fault scheme, and we may not revise this exclusion upon request. The trial court appropriately concluded that Foster's recovery from other persons for his self-inflicted injuries was contrary to law.

Foster's intentional conduct bars his recovery from the fraternal defendants as well as from Bar Barry. Nevertheless, to avoid future litigation, we will briefly address Foster's contentions of error with respect to the fraternal defendants.

## II.
### *Summary Judgment Favoring Local Chapter*

■ Foster admits the existence of a general rule in Indiana that a member of an unincorporated association cannot sue the association for the tortious conduct of another member. As the members are engaged in a joint enterprise, each member has a right to exercise control over the operations of the association. The negligence of a single member is imputed to all other members of the association. *Calvary Baptist Church v. Joseph* (1988), Ind., 522 N.E.2d 371.

■ Foster urges that an exception should be recognized where an unincorporated association has an existence separate from its members, and less than all members exercise control. He asserts that the Purdue Chapter has an existence separate from its membership at a single point in time. It retains its character as a local fraternal chapter, despite the continual change in membership due to graduating and incoming students. He also argues that his control was limited to a right to

---

**2.** Foster argues that exclusion of all intentional acts would preclude recovery by a person injured in an automobile accident, as the act of driving an automobile is "intentional." Obviously, Foster's conduct is unlike that of a ve-

hicle operator embroiled in an accident due to his own or others' negligence; his conduct is more analogous to that of a driver who deliberately heads his car into a brick wall.

vote for officers and that, as a new pledge, he had been unable to exercise even that measure of control over House activities. He relies upon California cases considered, but not adopted, in *Maroney v. F.O.P. Lodge No. 71* (1989), Ind.App., 546 N.E.2d 99, *trans. denied.* The *Maroney* court declined to recognize an exception for the type of associational structure described by Foster.

Depositions disclosed that the local chapter members decided on the use of alcohol in the house, determined the amount of alcohol to be purchased for parties, and decided to erect the makeshift "waterslide" for philanthropic purposes. No specific rules regarding alcohol use were enacted by the chapter. Any alcohol purchased with fraternity funds was available to both over–21 and under–21 fraternity members. Record, pp. 371–2, 380, 454, 462.

Foster participated in the informal decision-making of the unincorporated association. No compelling reasons exist for abrogating the general rule of imputed negligence expressed in *Calvary*. Assuming that association members negligently maintained the waterslide or negligently provided alcohol, any such negligence is properly imputable to Foster.

### III.

*Summary Judgment Favoring the House Association*

■ The House Association is a not-for-profit corporation whose members are present active members and alumni members of the Purdue Chapter. The House Association owns the house in which the Purdue Chapter members live.

Foster asserts two theories upon which the House Association could be held liable for the negligence of Purdue Chapter members: their assumption of a duty to control the chapter members and vicarious liability for the chapter members, as agents of the Association.

Foster acknowledges that Indiana courts generally follow the principles set forth in the Restatement (Second) of Torts regarding duty to control. There is no duty to control the conduct of a third person to prevent his causing harm to another unless a special relation exists between the actor and the third person imposing a duty upon the actor to control the third person's conduct or a special relation exists between the actor and the other which gives the other a right of protection. Restatement (Second) of Torts, § 315.

Foster argues that a special relationship between the Association and chapter members (giving rise to a duty to control) was created by the Association's execution of by-laws. He contends that the Association had the power to control the conduct of the chapter members. He refers us to Article VII of the Association by-laws, which provides:

"Section 1. The Board of Directors may also appoint a superintendent or manager of the property of the Association and prescribe such rules and regulations as they see proper for his maintenance and the management of the property, and for the conduct of the occupants and visitors of the Chapter House, and prescribe such penalties for the violation of such rules and regulations as may to such Board seem just and proper."

Record, p. 208.

The Association replies that the by-laws govern members' rights and responsibilities in membership matters, but could not reasonably be construed as an assumption of contractual liability for tortious conduct of members. The Association concedes that no attempt was made to impose enforceable rules on the Purdue Chapter. The Association might pass resolutions, but these were recommended rather than binding unless adopted by the chapter. Moreover, the Association contends that if it contracted to control the social behavior of members of the Purdue Chapter, Foster, as an Association member, would be contractually bound to control his own behavior. We agree that such a conclusion would be illogical.

Foster also asserts that the fraternity "social chairmen" who purchased alcohol acted as the agents of the Association,

thereby imposing vicarious liability on the Association.

Agency is a relationship which results from manifestation of consent by one party to another. The elements of agency are consent and control. An agent must acquiesce to the arrangement, and be subject to the principal's control. *Swanson v. Wabash College* (1987), Ind.App., 504 N.E.2d 327, 331. In the instant case, there are no disputed facts which might lead to an inference that the Association manifested an intent to create an agency relationship.

In short, the Association has not contractually, or by manifestation of intent to create an agency relationship, assumed a duty to control the behavior of Purdue Chapter members.

### Summary Judgment Favoring the General Fraternity

■ Foster asserts that the Beta Theta Pi Fraternity, an Ohio not-for-profit corporation, assumed the duty of controlling an alcohol problem within its local chapters. The Fraternity had discouraged alcohol abuse, including their publication of an advisory pamphlet. Further, the Fraternity had sanctioned at least one chapter for alcohol-related problems. The Fraternity also conducted an inspection of the Purdue Chapter, thereupon compiling "Visitation Reports."

Foster likens the Fraternity's conduct to that of defendants in various Indiana cases in which a gratuitous assumption of duty was found. In *Perry v. NIPSCO* (1982), Ind.App., 433 N.E.2d 44, *trans. denied,* summary judgment in favor of the defendant was reversed, the court finding that NIPSCO may have assumed control of job safety by holding regular safety meetings and employing safety inspectors. Summary judgment was also inappropriate, due to the existence of a jury question on the assumption of duty in *Ember v. B.F.D., Inc.* (1986), Ind.App., 490 N.E.2d 764 (bar had assured area residents that the bar staff was patrolling nearby premises, and issued fliers to that effect).[3] *See also*

*Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212 (construction manager held safety meetings, ordered precautions and conducted inspections).

The Fraternity responds that it functions only as a resource and support services organization offering guidelines to local chapters. Its sole enforcement power is that of suspending or revoking charters. It has no power to implement specific procedures within the chapters.

We conclude that only one inference could reasonably be drawn from the Fraternity's "advisory" communications to the Purdue Chapter concerning alcohol use. The Fraternity did not gratuitously assume a duty to control alcohol consumption by the Purdue Chapter members.

As there are no genuine issues of material fact and each defendant is entitled to summary judgment as a matter of law, the judgment of the trial court is affirmed.

HOFFMAN, P.J., and GARRARD, J., concur.

---

**3.** Although the Ember decision was partially modified at 521 N.E.2d 981, gratuitous assumption of duty remained a potential basis of liability.