**INDIANA ALCOHOLIC BEVERAGE COMMISSION, et al., Appellants–Respondents,**

v.

**21ST AMENDMENT, INC., Appellee–Petitioner.**

No. 49A04–9306–CV–223.

Court of Appeals of Indiana, Fourth District.

Dec. 30, 1993.

Pamela Carter, Atty. Gen., Richard E. Shevitz, Deputy Atty. Gen., Indianapolis, for appellants-respondents.

Stanley C. Fickle, Brian J. Martin, Barnes & Thornburg, Indianapolis, for amicus curiae.

Daniel P. Byron, Jan K. Keefer, McHale, Cook & Welch, Indianapolis, for appellee-petitioner.

CONOVER, Judge.

Respondent–Appellant Indiana Alcoholic Beverage Commission, et al. (hereinafter, ABC) appeals the Marion Circuit Court's decision to reverse an ABC administrative ruling pertaining to Petitioner–Appellee 21st Amendment, Inc.

We reverse.

The following issues are presented for our review:

1. whether ABC correctly determined that 21st Amendment acted outside the scope of its beer dealer permit in violation of IND.CODE 7.1–3–5–3 and acted outside the scope of its liquor dealer permit in violation of IC 7.1–3–10–7; and

2. whether ABC correctly determined 21st Amendment sold alcoholic beverages outside of its licensed premises in violation of IC 7.1–3–5–3.[1]

ABC charged 21st Amendment with 52 counts of acting outside the scope of its beer dealer permit by selling beer to an unauthorized source and with two counts of acting outside the scope of its liquor dealer permit by selling liquor to an unauthorized source. The charges were based upon 21st Amendment's sales of large quantities of alcoholic beverages to an unlicensed entity for resale outside Indiana.

21st Amendment requested a hearing on the charges. At the hearing, the parties stipulated to the following facts:

1. 21st Amendment, Inc. ("21st Amendment), an Indiana corporation in good standing, is the holder of a 217 type permit (liquor, beer, and wine dealer), for each of its twelve retail stores, one of which is located at 7020 North Michigan Road, Indianapolis, Indiana. In 1990, 21st Amendment had an annual retail sales volume of approximately Twelve Million, Four Hundred Twenty–Eight Thousand Dollars ($12,428,000.00) with sales of approximately Two Million Four Hundred Forty Thousand Dollars ($2,440,000.00) at the said North Michigan Store.

2. James A. James ("James") is President and majority shareholder of 21st Amendment. James owns 999 of the 1,000 [shares] issued and outstanding shares of the corporation. The remaining share is owned by Lou Anne Brennan, Secretary of the Corporation.

3. In late 1989 or early 1990, James received a telephone call at 21st Amendment from Harry Kagan ("Kagan") an agent of Frank's Distributing, Inc. of Denver, Colorado. Among other things, Frank's Distributing, Inc. is a licensed importer and exporter of alcoholic beverages.

4. In the course of the conversation, Kagan asked James if Kagan could purchase large quantities of alcoholic beverages from 21st Amendment for shipment to an out-of-state location with possible shipment outside the country.

5. James conferred with his attorney regarding this matter and was advised that Indiana law contained no prohibition for this type of transaction. James then agreed for 21st Amendment to sell these alcoholic beverages on a retail basis to Kagan.

6. From approximately March 30, 1990, to October 22, 1990, 21st Amendment sold to Kagan 101,330 cases of beer.

7. From approximately March 30, 1990, to October 22, 1990, 21st Amendment sold to Kagan 1,650 cases of liquor (Makers Mark).

8. These transactions were initiated by a telephone call from Kagan in Denver, Colorado to James at 21st Amendment in Indianapolis, Indiana, requesting to buy a specific number of cases of beer or

---

**1.** Because we reverse on the first issue, we do not reach the second issue.

liquor. James would quote a retail price to Kagan which was higher than 21st Amendment's otherwise advertised retail price. Kagan then would mail a check, written on his Denver, Colorado, checking account, payable to 21st Amendment, for the price of the alcoholic beverages as quoted by James.

9. Kagan's beer orders were filled from 21st Amendment's existing inventory, which inventory had previously been purchased from various Indiana wholesalers of alcoholic beverages as part of 21st Amendment's regular orders.

10. Kagan's liquor order (Makers Mark) was not filled from existing inventory. 21st Amendment ordered Makers Mark from an Indiana wholesaler to fill Kagan's order.

11. As to all orders, Kagan then transmitted by facsimile to 21st Amendment a Straight Bill of Lading which included the date the alcoholic beverages would be picked up by a carrier arranged for by Kagan at the permit premises located at 7020 North Michigan Road, Indianapolis, Indiana. These Bills of Lading indicate on their face that all sales were to be shipped to an out-of-state location with an ultimate destination of Japan....

12. On the date indicated on the Bill of Lading, a truck arranged for by Kagan would arrive at the permit premises of 21st Amendment located at 7020 North Michigan Road, Indianapolis, Indiana, and the employees of the 21st Amendment would assist in loading the alcoholic beverages into a container on the truck.

13. Typically, 2,000 cases of beer would totally fill the container.

14. The transportation arrangements of the alcoholic beverages were made by Kagan.

15. The carrier as so arranged then transported the container of alcoholic beverages to a railroad yard in Chicago, Illinois.

16. The sales of the alcoholic beverages to Kagan were recorded in 21st Amendment's accounting records but were not separately noted on the store cash register.

17. These sales generated state excise tax at or about $36,861.25 and federal excise tax at or about $110,273.00 when the beer and liquor were originally purchased from the various wholesalers. 21st Amendment did not collect any Indiana sales tax from Kagan on any of these sales.

(R. 60–62).

The parties appeared before the hearing officer on April 14, 1992, and presented oral arguments on the legal issues. On May 4, 1992, ABC issued its decision, setting forth its conclusions of law finding 21st Amendment in violation of statute upon all 54 counts and imposing fines in the amount of $130.00 per count, for a total fine in the sum of $7020.00.

21st Amendment petitioned for judicial review by the Marion Circuit Court on June 3, 1992. The Marion Circuit Court entered judgment against ABC, finding:

\* \* \* \* \* \*

3. Based upon said [stipulated] facts, the Administrative Decision of the ABC, dated May 4, 1992, is deemed to be arbitrary, capricious and an abuse of discretion, and is not in accordance with Indiana law.

4. 21st Amendment, Inc. did not violate the scope of its beer dealer permit, Indiana Code § 7.1–3–5–3 and did not violate the scope of its liquor dealer permit, Indiana Code § 7.1–3–10–7 with regard to the subject transactions.

5. In accordance with the terms of said statute, 21st Amendment, Inc. sold beer and liquor to a customer, to-wit, Harry Kagan. There is no limiting language in said statute as to who may or may not be a customer and the statute does not restrict sales only to "authorized" customers. The terms "authorized" or "unauthorized" are not utilized in the statute.

6. 21st Amendment's deliveries of beer and liquor to the customer in question were made on 21st Amendment's licensed premises, and the sales of beer and liquor were made at retail prices.

7. Indiana law defining the scope of a retail beer or liquor dealer's permit does not require that the retail beer or liquor dealer sell to a customer who will be the ultimate consumer of the purchased product. Indiana law does not require that a customer of a retail outlet ultimately consume such product. The term "consumer" is not incorporated directly or even by reference into the meaning of the term "customer" as such is employed in Indiana Code § 7.1–3–5–3 and Indiana Code § 7.1–3–10–7, and these two terms are not synonymous as utilized in connection with Indiana Alcoholic Beverage Laws and Rules.

8. A licensed retail liquor or beer dealer is not responsible for the customer's end use of a purchased alcoholic beverage nor is such a dealer responsible for the actions of its customers.

Therefore, it is ORDERED, ADJUDGED and DECREED that the Administrative Decision dated May 4, 1992, of the Indiana Alcoholic Beverage Commission and its respective Commissioners, be VACATED and SET ASIDE and said matter is herewith REMANDED to the Indiana Alcoholic Beverage Commission for further determination not inconsistent with this Decision on Review of Agency Action.

(R. 141–142).

■ As a general rule, a court may not substitute its judgment for that of an administrative agency and should accord the agency's interpretation of a statute great weight. *Indiana Alcoholic Beverage Commission v. River Road Lounge* (1992), Ind.App., 590 N.E.2d 656, 658, *trans. denied.* An agency's decision should only be reversed if the court finds the decision is not based on probative value, is contrary to law, or is clearly contrary to the meaning of the statute. *Indiana Civil Rights Commission v. Wellington Village* (1992), Ind.App., 594 N.E.2d 518, 529. Administrative agencies such as ABC enjoy broad authority to interpret and enforce pertinent statutes. *Indiana Department of Environmental Management v.*

*AMAX, Inc.* (1988), Ind.App., 529 N.E.2d 1209, 1214, *trans. denied.*

An entity which manufactures and/or distributes alcoholic beverages in Indiana must acquire a permit. The scope of the permit is defined by statute. Brewers may manufacture beer, place it in containers or bottles, transport it, and sell and deliver it to a party "holding an appropriate permit." IC 7.1–3–2–7. A beer wholesaler may purchase, import, and sell beer and liquor at wholesale from its own inventory to another wholesaler, a consumer (in barrels), or holders of various retailer or dealer permits. IC 7.1–3–3–5. A beer or liquor dealer may purchase and possess beer or liquor and sell it at retail to a customer in permissible containers or packages on the licensed premises or, in limited quantities, at the customer's location. IC 7.1–3–5–3; IC 7.1–3–10–7.

In the present case, 21st Amendment is a beer and liquor dealer. As stated above, IC 7.1–3–5–3 and IC 7.1–3–10–7 permit dealers of beer and liquor to sell *at retail* to a customer, while IC 7.1–3–3–5 permits wholesalers to sell *at wholesale* to their customers. Neither "retail" nor "wholesale" are defined in the statutes regulating the manufacture and sale of alcoholic beverages.

■ In interpreting a statute, a court must give effect and meaning to every word of the statute. *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823; *Spaulding v. International Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307, 309. In construing a particular word which is not defined by statute, a court must give the word its "common and ordinary meaning." *In the Matter of Lawrance* (1991), Ind., 579 N.E.2d 32, 38.

■ In the present case, the trial court did not recognize that a beer and liquor dealer may only sell at "retail." The court erroneously found the statutes contained no limiting language on the manner in which a dealer may conduct its sales. The effect of the trial court's error as it applies to the facts of the present case is discussed below.

· The term "retail" was defined by our supreme court in *Department of Treasury of Indiana v. Ridgely* (1936), 211 Ind. 9, 4 N.E.2d 557, 562, as "to sell in small quantities or parcels." This definition is also found in an expanded form in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1938 (1976) wherein "retail" is defined as "the sale of commodities or goods in small quantities to ultimate consumers." "Retail" is different from "wholesale" in that the latter term denotes "the sale of goods or commodities in quantity for resale." *Id.* at 2611. The verb "retail" is also defined in BLACK'S LAW DICTIONARY 1182 (5th ed. 1979) as "[t]o sell by small quantities, in broken lots or parcels, not in bulk, directly to the consumer." The noun "retail" is defined as "[a] sale for final consumption in contrast to a sale for further sale or processing (i.e. wholesale)." *Id.* These definitions of the term are consistent with IC 7.1-3-5-1 which states that the ABC "may issue a beer dealer's permit to a person who desires to sell beer to customers *for consumption* only off the premises....," and IC 7.1-3-10-1 which states that the ABC "may issue a liquor dealer's permit to a person who desires to sell liquor to customers *for consumption* off the licensed premises." (Emphasis supplied).[2]

In the present case, the stipulated facts show 21st Amendment sold large quantities of beer and liquor to Frank's Distributors with the knowledge, as shown by the bill of lading, that the beer and liquor was purchased for the purpose of resale.[3] Thus, 21st Amendment's sales to Frank's Distributors were outside the scope of its beer and liquor dealer's permits and the ABC was correct in imposing the fines.[4]

21st Amendment contends a statute imposing fines for sales outside the scope of a permit must be strictly construed. The rule of strict construction does not require that the words used in a statute be given their narrowest possible meanings, and the rule is not violated by permitting the words to have their full meaning or the more extended of two meanings. 82 C.J.S. *Statutes* § 387 (1953). Furthermore, a construction is not to be put upon a statute "which will defeat the clear intention of the legislature." *Board of Commissioners of Marion County v. Board of School Commissioners of the City of Indianapolis* (1960), 130 Ind.App. 506, 166 N.E.2d 880, 887. Here, the common definition of the term "retail" and the adverb phrase "at retail" corresponds with the language of IC 7.1-3-5-1 and IC 7.1-3-10-1. There is no justification for ignoring the limiting language of IC 7.1-3-5-3 or IC 7.1-3-10-7 in light of this correspondence.

21st Amendment also contends the phrase "at retail" should be interpreted to entail the acquisition of property for the purpose of retail and the transfer of such property for consideration during the ordinary course of a regularly conducted trade or business. In support of its contention, 21st Amendment cites *Monarch Beverage*

---

2. We anticipate 21st Amendment's argument that one source, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1938 (1976), defines the adverb phrase "at retail" as "at a price customarily asked by a retailer." We note the phrase is also defined as simply a substitute for "retail." This second definition is consistent with IC 7.1-3-5-1 and IC 7.1-3-10-1.

3. 21st Amendment contends an interpretation of IC 7.1-3-5-3 and IC 7.1-3-10-7 utilizing the common definition of "retail" forces a beer and liquor dealer to inquire of its customers as to the customer's ultimate use of the beer or liquor. It points to *Foster v. Purdue University Chapter, The Beta Mu of Beta Theta Pi* (1991), Ind.App., 567 N.E.2d 865, as authority that no inquiry is required.

In *Foster,* this court held IC 7.1-3-5-3 defines the scope of a permit and does not impose upon a dealer the duty to prevent a consumer's intoxication. 567 N.E.2d 865. We did not hold that a seller of alcoholic beverages whose permit does not give it authority to sell at wholesale may knowingly make wholesale sales.

4. 21st Amendment contends the common definition of "retail" was not intended by the legislature because IC 7.1-3-6-5 authorizes a beer dealer to sell beer to the holder of a temporary beer retailer's permit who will resell the beer on its licensed premises. To the contrary, we find the legislature's express provision of authority to sell to the holder of a temporary beer retailer's permit indicates the legislature's realization that IC 7.1-3-5-3 does not permit this type of "wholesale" transaction.

*Co., Inc. v. Department of State Revenue* (1992), Ind.Tax, 589 N.E.2d 1209. In *Monarch,* the Tax Court applied the statutory definition of the phrase "selling at retail" to the facts of the case before it. 589 N.E.2d at 1212. We know of no reason why the special statutory definition utilized in the tax statutes should apply to the alcoholic beverage statutes. Furthermore, we see no reason to give the particularized tax definition of "selling at retail" primacy over the common definition of "retail" or "at retail."

We reverse and remand to the trial court for entry of judgment consistent with this opinion.

Reversed.

MILLER and SHIELDS, JJ., concur.