Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 12 2014, 10:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSEPH A. CHRISTOFF**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL H. MICHMERHUIZEN**
**THOMAS M. KIMBROUGH**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TASHA ENSLEY, et al., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1308-CT-340 |
| | ) | |
| VETERANS OF FOREIGN WARS, et al., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Nancy Eshcoff Boyer, Judge
Cause No. 02D01-1109-CT-447

**March 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Tasha Ensley ("Ensley") and Dawn McElvene ("McElvene") (collectively, "the Plaintiffs") appeal from the Allen Superior Court's grant of summary judgment in favor of the Veterans of Foreign Wars Department of Indiana ("the Indiana Department") in the Plaintiffs' negligence action against the Indiana Department. We agree with the trial court's conclusion that the Indiana Department did not assume a duty to the Plaintiffs under negligence theory and therefore, we affirm.

**Facts and Procedural History**

The Veterans of Foreign Wars of the United States ("the National VFW") is a congressionally-chartered war veterans' organization that provides services and programming for veterans, military personnel, and their families. The Indiana Department is a subdivision of the National VFW and operates under a charter from the National VFW. The Indiana Department is divided into eleven districts. Those eleven districts are further divided into approximately seventy VFW posts, most of which are incorporated as separate non-profit corporations. Each post operates under a charter issued by the National VFW.

The bylaws of the National VFW and the Indiana Department allow the Indiana Department little control over the activities of individual posts. Each post elects its own leaders under a procedure prescribed by the Indiana Department. VFW members join the National VFW through their local post. Members pay membership dues to the National VFW, which remits a portion of those dues to the Indiana Department. In addition, each post pays a delegate fee to the Indiana Department for each delegate sent to the VFW state convention. The Indiana Department performs an annual inspection of each post in

2

the state and can suspend or revoke a post's charter for failure to follow the bylaws of the National VFW or the Indiana Department or failure to participate in veterans' service programming.

Posts may choose to operate a club, but are not required to do so. Clubs are considered to be subordinate units of the individual post. The bylaws of the Indiana Department and the National VFW do not regulate posts' operation of clubs, bars, or canteens. Rather, the Indiana Department's Club Regulations require posts to submit individual club bylaws and applications for liquor licenses to the Indiana Department's State Commander for approval and limit club membership to VFW and Auxiliary members, but otherwise assign responsibility for the operation of the clubs to a post's House Committee, a Post Commander, and post membership. The Indiana Department does not have the authority to select members of the House Committee, hire post employees, or receive proceeds from the post's operation of a club. The Indiana Department receives the same portion of a post's membership dues and delegation fees regardless of whether the post operates a club.

The Veterans of Foreign Wars Selmer Kinrick Post 8147 ("Post 8147") is located in Fort Wayne and operates a club, at which the post periodically hosts social gatherings open to VFW members and non-members. Post 8147 is organized as a not-for-profit corporation.

On October 17, 2009, Ensley and McElvene, who are not VFW members, were guests at a social event hosted by Post 8147 at its club. While Ensley and McElvene were at the club, Cheynne Javon Williams ("Williams"), who is also not a VFW member,

became involved in an altercation with Titus Jackson ("Jackson") and Jajuan Fairgood ("Fairgood"). Post 8147's Post Commander had contracted with Jackson and Fairgood to provide security for the club that night, but neither Jackson nor Fairgood were Post 8147 employees. Williams had in his possession a gun that another club guest had smuggled past the security guards. Williams planned to use the gun to attack a Post 8147 employee who Williams believed to be involved with his girlfriend. During Williams' altercation with Jackson and Fairgood, Ensley and McElvene were shot and injured by Williams.

On September 7, 2011, Ensley and McElvene filed their complaint in Allen Superior Court, alleging, among other things, that the Indiana Department breached its duty to ensure that Post 8147's club was "reasonably safe for the guests such as McElvene and Ensley." Appellant's App. p. 23. The Indiana Department filed its motion for summary judgment on February 28, 2012. On March 4, 2013, Ensley and McElvene filed their response to the Indiana Department's motion for summary judgment. On April 29, 2013, the trial court heard arguments in chambers on the motion for summary judgment and granted the motion in favor of the Indiana Department. One month later, on May 29, 2013, Ensley and McElvene filed their motion to correct error. On July 29, 2013, the trial court held a hearing on the motion to correct error and issued an order denying the motion on the same day.

Ensley and McElvene now appeal.

**Discussion and Decision**

Ensley and McElvene argue that the trial court erred when it granted the Indiana Department's motion for summary judgment. Our standard of review of summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark County Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

## I. Existence of Duty

Ensley and McElvene argue that the trial court erred in finding that the Indiana Department owed them no duty. Specifically, they argue that the trial court "erred by determining that there was not the requisite control of the higher up parent post, Department of Indiana, over one of its subordinate local posts[.]" Appellant's Br. at 10.

Essentially, the Plaintiffs argue that the Indiana Department affirmatively and gratuitously assumed a duty to provide for their safety at social gatherings at the VFW Post 8147 club.

A duty of care may arise where one party gratuitously or voluntarily assumes such a duty. Yost v. Wabash Coll., 54S01-1303-CT-161, 2014 WL 575955 (Ind. Feb. 13, 2014). An assumption of duty creates a special relationship between the parties and a corresponding duty to act as a reasonably prudent person. Id. "The actor must specifically undertake to perform the task he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully." Am. Legion Pioneer Post No. 340 v. Christon, 712 N.E.2d 532, 535 (Ind. Ct. App. 1999) (citation and quotation marks omitted), trans. denied. This means that the defendant must have undertaken the duty both "specifically and deliberately . . . . [I]t is also important that the party on whose behalf the duty is being undertaken relinquish control of the obligation; the party who adopts the duty must be acting 'in lieu of' the original party." Griffin v. Simpson, 948 N.E.2d 354, 360 (Ind. Ct. App. 2011), trans. denied. Although the existence and extent of an assumed duty is generally a question of fact for the factfinder, it may be resolved as a matter of law if the designated evidence is insufficient to establish such a duty. Id.

In support of their argument that the Indiana Department assumed a duty to them, Ensley and McElvene point to regulations promulgated by the Indiana Department which allow the Indiana Department to issue orders to posts regarding the operation of the posts

6

and their clubs, allow inspections of posts by the Indiana Department, and provide that Post Commanders are responsible to the State Commander for enforcement of regulations related to the operation of the post clubs.

The Plaintiffs also cite Smith v. Delta Tau Delta, 988 N.E.2d 325 (Ind. Ct. App. 2013), in support of their claim. In Smith, the estate of a fraternity pledge who died as a result of a hazing incident sued, among others, the national fraternal organization. The trial court granted summary judgment in favor of the national organization. Another panel of this court reversed, concluding that there was a genuine issue of material fact as to whether the national organization had assumed a "duty to protect its pledges from hazing and excessive alcohol consumption." Id. at 338. The court noted that the national fraternal organization had "increased its involvement in the local chapters throughout the years, culminating in the detailed membership responsibility guidelines specifically dedicated to hazing and alcohol." Id. at 337. The court further observed that the national organization set forth "specific behavior provisions" for each chapter and also included enforcement criteria, with penalties for violations of the provisions ranging from fines to educational programming to suspension of the member. Id. The national organization also expressly prohibited any drinking games or alcohol consumption at pledge activities, mandated that each new member complete an alcohol education program by the end of his initiation term, and instructed its chapters to notify it immediately of any violations of its guidelines. In finding that a genuine issue of material fact existed as to the national fraternity's duty to pledges of local chapters, this court noted that the rules promulgated by the national organization were "not mere guidelines as would be understood in

7

common parlance in the sense of being voluntary. Rather, a sophisticated compliance and enforcement mechanism ensured acquiescence from the local chapters. Through its chapter consultants and chapter advisors, Delta Tau Delta remained apprised of the daily activities in their local chapters." Id. at 338.

The Plaintiffs argue that the degree and nature of the control exerted by the Indiana Department over VFW Post 8147 "is very similar to the circumstances in Smith v. Delta Tau Delta[.]" Appellant's Br. at 10. We disagree. The facts of the present case are quite distinguishable from those in Smith. Here, the Indiana Department did not impose on local VFW posts any rules or regulations regarding social gatherings hosted at the posts' clubs, other than requiring that all posts must submit liquor permit applications to the State Commander for approval, that only post members may be members of the posts' clubs, and that only post members over the age of twenty-one may purchase alcoholic beverages in the clubs. The bylaws also provide that the Post Commander is responsible to the State Commander for enforcing these regulations.

In Smith, the national fraternal organization had taken deliberate and direct action to regulate chapters in an effort to protect pledges and members from hazing incidents, so much so that our court noted that the national organization sought to "remain[ed] apprised of the *daily* activities in their local chapters." Smith, 988 N.E.2d at 338 (emphasis added). By contrast, in the case before us, the designated evidence does not indicate either a specific, deliberate and direct undertaking by the Indiana Department to protect patrons of social gatherings hosted by Post 8147's club or any reliance by the Plaintiffs on the Indiana Department to act in furtherance of the alleged gratuitously

8

assumed duty. See Yost v. Wabash Coll., 54S01-1303-CT-161, 2014 WL 575955 (Ind. Feb. 13, 2014) (finding no gratuitously assumed duty where there was no evidence or reasonable inference to establish that Wabash College "deliberately and specifically undertook to control and protect Yost from the injuries he sustained or to generally prevent its students from engaging in injurious private conduct toward each other" or that "Yost in any way relied upon Wabash to take action in furtherance of the claimed gratuitously assumed duty."); Am. Legion Pioneer Post No. 340 v. Christon, 712 N.E.2d 532 (Ind. Ct. App. 1999) (holding that the American Legion had not assumed a duty to protect the plaintiff, who was shot and injured by a third party while inside the American Legion's building, even though the American Legion maintained a security guard at the entrance of the building); Foster v. Purdue University Chapter, The Beta Mu of Beta Theta Pi, 567 N.E.2d 865, 872 (Ind. Ct. App. 1991) (rejecting the plaintiff's argument that a national fraternity had assumed a duty to control its members by distributing a pamphlet containing information about alcohol abuse, sanctioning a chapter for alcohol-related incidents, and inspecting a chapter.). Under this well settled law, we hold that the trial court properly concluded, as a matter of law, that the Indiana Department owed no duty to the Plaintiffs under negligence theory.

## II. Agency Relationship

Ensley and McElvene next argue that VFW Post 8147 operates as an agent of the Indiana Department and, thus, the Indiana Department is liable as a principal for the Plaintiffs' injuries that occurred while they were guests at Post 8147's club. However, because Ensley and McElvene did not raise this argument in their response to the Indiana

9

Department's motion for summary judgment, it is waived. See H & G Ortho, Inc. v. Neodontics Int'l, Inc., 823 N.E.2d 718, 730 (Ind. Ct. App. 2005) ("[A] party may not present an argument or issue to this court on appeal unless that issue was first presented to the trial court."). Waiver notwithstanding, the Plaintiffs' argument still fails.

In order to find that the Indiana Department is liable under this theory, an agency relationship must exist between VFW Post 8147 and the Indiana Department. Foster, 567 N.E.2d at 872. Agency is a relationship which results from the agent's manifestation of consent to be subject to the control of the principal. Id. Apparent authority must be initiated by a manifestation of the principal, rather than by the agent. Swanson v. Wabash College, 504 N.E.2d 327, 331 (Ind. Ct. App. 1987). In other words:

> the necessary manifestation is one made by the principal to a third party who in turn is instilled with a reasonable belief that another individual is an agent of the principal. It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship.

Id. at 331-32.

In this case, there is no evidence in the record which supports the conclusion that the Indiana Department manifested an intent to create an actual or implied agency relationship with Post 8147. The Indiana Department neither mandates the operation of a club nor receives financial benefit from Post 8147's operation of its club. Furthermore, the Indiana Department lacks control over the post's day-to-day operation of its club and certainly did not direct the post's activities leading up to the shooting incident that occurred on October 17, 2009. Even if Post 8147 was considered an agent of the Indiana

10

Department with respect to administering veterans services programs or remitting membership dues, it is not an agent of the Indiana Department with respect to the operation of its club or its social gatherings. Indeed, the Indiana Department bylaws state "[t]he operation, management and control of Clubs and/or canteens were not envisioned in the purposes of our organization" and, further, "VFW Clubs and/or canteens shall be of secondary interest and concern[.]" Appellant's Br. at 4-5. See Bitzer v. Pradziad, 571 N.E.2d 593, 596 (Ind. Ct. App. 1991) (concluding that, although vice commander of district in Indiana Department of American Legion could potentially be deemed an agent of the Department with respect to certain administrative tasks performed by the commander, the Department was not liable for damages arising out of automobile accident which occurred as commander returned from performing those tasks, absent any evidence that Department had any right or power to control commander's conduct or ever attempted to do so.); see also 10 C.J.S. Beneficial Associations § 54 ("Even though the national organization has the ability to revoke a local chapter's charter, this alone does not give rise to a special relationship giving rise to a duty on the part of the national organization to exercise reasonable care to control the local chapter, where the national organization has otherwise disclaimed all supervision and control, and the local chapter operates in a manner consistent with that disclaimer, since the organization's ability to revoke the charter provides no genuine leverage over the local chapter."). Thus, we conclude as a matter of law that, and waiver notwithstanding, no agency relationship exists between the Indiana Department and VFW Post 8147 with respect to the operation of Post 8147's club.

11

## Conclusion

For all of these reasons, we conclude that the designated evidence does not establish that the Indiana Department assumed a duty of care toward Ensley and McElvene, whether by way of assumption of duty, by control or by way of an agency relationship with VFW Post 8147. Therefore, we hold that the trial court did not err in granting summary judgment in favor of the Indiana Department.

Affirmed.

BRADFORD, J., and PYLE, J., concur.